UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BARKER-HOMEK,

              Plaintiff,

vs.

ABU DHABI NATIONAL ENERGY
COMPANY PJSC aka TAQA, a
Corporation; TAQA NEW WORLD,
INC., a Delaware corporation; CARL
SHELDON, an individual; and DOE
DEFENDANTS 1-50, inclusive,

              Defendants.

Case No. 5:10-CV-13448-JCO-VMM

Judge John Corbett O'Meara
Magistrate Judge Virginia M. Morgan

Louis R. Miller (admission pending)
A. Sasha Frid (admission pending)
James M. Miller (admission pending)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
(310) 552-4400
smiller @millerbarondess.com
sfrid@millerbarondess.com
jmiller@millerbarondess.com

Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 355-0300
jyoung@sommerspc.com

*Counsel for Plaintiff*

John F. Birmingham Jr. (P47150)
Adam J. Wienner (P71768)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226-3489
(313) 234-7100
jbirmingham@foley.com
awienner@foley.com

David Dunn
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
david.dunn@hoganlovells.com

*Counsel for Defendants TAQA and TAQA New World, Inc.*

## MOTION TO DISMISS ON BEHALF OF DEFENDANTS TAQA AND TAQA NEW WORLD, INC.

Defendants Abu Dhabi National Energy Company PJSC, aka TAQA ("TAQA")

and TAQA New World, Inc. ("TNW"), hereby move to dismiss Plaintiff Peter Barker-Homek's

Complaint in its entirety.

Defendant TAQA moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  If the Court grants that motion, Defendant TNW moves to dismiss the action under Rule 12(b)(7) because TAQA is a necessary and indispensable party, without which the action should not proceed.

If the Court denies the motion to dismiss under Rule 12(b)(2) and 12(b)(7), it should dismiss the case under Federal Rule 12(b)(3) for improper venue.  Finally, if the Court denies the motion on other grounds, the breach of contract claim should be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The grounds for this motion are set forth more fully in the accompanying Brief. A proposed Order is attached.

Pursuant to E. D. Mich. LR 7.1(a), there was a conference between attorneys in which the movant explained the nature of the motion or request and its legal basis and requested, but did not obtain, concurrence in the relief sought.

Respectfully submitted,


/s/ Adam J. Wienner_____
John F. Birmingham Jr. (P47150)
Adam J. Wienner (P71768)
FOLEY & LARDNER LLP
500 Woodward Avenue
Suite 2700
Detroit, MI  48226-3489
(313) 234-7100
jbirmingham@foley.com
awienner@foley.com

David Dunn
HOGAN LOVELLS US LLP
875 Third Avenue

New York, NY  10022
Tel:  212-918-3000
Fax:  212-918-3100
david.dunn@hoganlovells.com

*Counsel for Defendants TAQA and*
*TAQA New World, Inc.*

Of Counsel:

Paul C. Skelly (admission pending)
Robert S. Bennett (admission pending)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC  20004
Tel:  202-637-5600
Fax:  202-637-5910
paul.skelly@hoganlovells.com
robert.bennett@hoganlovells.com

Date: November 5, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BARKER-HOMEK,

                Plaintiff,                  Case No. 5:10-CV-13448-JCO-VMM

vs.

                                      Judge John Corbett O'Meara

ABU DHABI NATIONAL ENERGY      Magistrate Judge Virginia M. Morgan
COMPANY PJSC aka TAQA, a
Corporation; TAQA NEW WORLD,
INC., a Delaware corporation; CARL
SHELDON, an individual; and DOE
DEFENDANTS 1-50, inclusive,

                Defendants.

---

Louis R. Miller (admission pending)     John F. Birmingham Jr. (P47150)
A. Sasha Frid (admission pending)       Adam J. Wienner (P71768)
James M. Miller (admission pending)   FOLEY & LARDNER LLP
MILLER BARONDESS, LLP          500 Woodward Avenue, Suite 2700
1999 Avenue of the Stars, Suite 1000  Detroit, Michigan 48226-3489
Los Angeles, CA 90067            (313) 234-7100
(310) 552-4400                  jbirmingham@foley.com
smiller@millerbarondess.com       awienner@foley.com
sfrid@millerbarondess.com
jmiller@millerbarondess.com         David Dunn
                                 HOGAN LOVELLS US LLP
Jesse L. Young (P72614)          875 Third Avenue
SOMMERS SCHWARTZ, P.C.      New York, NY 10022
2000 Town Center, Suite 900      (212) 918-3000
Southfield, Michigan 48075       david.dunn@hoganlovells.com
(248) 355-0300
jyoung@sommerspc.com          *Counsel for Defendants TAQA and TAQA New*
                                 *World, Inc.*

*Counsel for Plaintiff*

## BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS TAQA AND TAQA NEW WORLD, INC.

# TABLE OF CONTENTS

**Page**

STATEMENT OF QUESTIONS PRESENTED................................................................vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .....................................viii

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND............................................................................................1

ARGUMENT....................................................................................................................5

I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT
     LACKS PERSONAL JURISDICTION OVER TAQA, AND TAQA IS AN
     INDISPENSABLE PARTY. ....................................................................................5

     A.   General Jurisdiction Cannot Be Exercised Over TAQA Because It
          Does Not Have Continuous and Systematic Contacts in Michigan. ............6

     B.   Specific Jurisdiction Cannot Be Exercised Over TAQA because its
          Limited Michigan Contacts Do Not Give Rise to the Claims. ....................8

          1.   TAQA has not purposefully availed itself of the privilege of
               acting in Michigan. ..........................................................................9

          2.   The cause of action is not substantially connected to TAQA's
               in-state activities. ...........................................................................11

          3.   Exercising specific jurisdiction over TAQA would be
               unreasonable under the circumstances.............................................13

     C.   If TAQA Is Dismissed under Rule 12(b)(2), the Entire Action Should
          Be Dismissed Under Rule 12(b)(7) for Failure to Join a Required
          Party...........................................................................................................15

          1.   TAQA is a required party under Rule 19(a). ...................................15

          2.   The action should be dismissed because TAQA cannot be
               joined, and under Rule 19(b), it would be inequitable for the
               case to proceed without TAQA. ......................................................16

II.  THE CASE SHOULD BE DISMISSED UNDER RULE 12(B)(3)
     PURSUANT TO A CONTRACTUAL, MANDATORY FORUM
     SELECTION CLAUSE OR UNDER THE DOCTRINE OF FORUM NON
     CONVENIENS..........................................................................................................19

A.      The Court Should Enforce the Forum Selection Clause of the
        Employment Agreement. ..................................................................19

B.      Dismissal in Favor of an Abu Dhabi Forum is Warranted Under the
        Doctrine of *Forum Non Conveniens*..............................................22

        1.      Abu Dhabi is an adequate alternative forum. ...................22

        2.      The balance of private and public interests overwhelmingly
                favors Abu Dhabi..............................................................23

III.  PLAINTIFF'S CONTRACT CLAIMS SHOULD BE DISMISSED UNDER
      RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.........................................25

A.      Standard of Review...........................................................................26

B.      The Choice of Law Provision in the Contract is Enforceable under
        Michigan Law....................................................................................26

C.      The Breach of Contract Claim Fails To Allege Sufficient Facts to
        Entitle Plaintiff to Relief under Abu Dhabi Law............................27

CONCLUSION.............................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.,
    364 F.3d 884 (7th Cir. 2004) .......................................................................21

Andrews Univ. v. Robert Bell Indus., Ltd.,
    685 F. Supp. 1015 (W.D. Mich. 1988) .........................................................5

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009).................................................................................26

Ausel v. Unisys Corp.,
    No. 94-73359, 1996 WL 426476 (E.D. Mich. Apr. 9, 1996),
    aff'd, 129 F.3d 1263 (6th Cir. 1997)...........................................................13

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).....................................................................................25

Caldwell v. Cheapcaribbean.com, Inc.,
    No. 2:09-cv-13828, 2010 WL 3603778 (E.D. Mich. Sept. 8, 2010) ...........7

Calphalon v. Rowlette,
    228 F.3d 718 (6th Cir. 2000) .......................................................................13

Chandler v. Barclays Bank PLC,
    898 F.2d 1148 (6th Cir. 1990) .......................................................................5

City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,
    399 F.3d 651 (6th Cir. 2005) .......................................................................13

CompuServe, Inc. v. Patterson,
    89 F.3d 1257 (6th Cir. 1996) ....................................................................5, 9

Cooper v. Digital Processing Sys., Inc.,
    182 F.R.D. 242 (N.D. Ohio 1998),
    aff'd, 215 F.3d 1342 (Fed. Cir. 1999)..........................................................16

Cupp v. Alberto-Culver USA, Inc.,
    308 F. Supp. 2d 873 (W.D. Tenn. 2004).....................................................6, 8

Dean Mktg. v. AOC Int'l (USA) Ltd.,
    610 F. Supp. 149 (E.D. Mich. 1985).............................................................6

Dean v. Motel 6 Operating L.P.,
    134 F.3d 1269 (6th Cir. 1998) ............................................................9, 11, 12

iii

Dowling v. Richardson-Merrell, Inc.,
    727 F.2d 608 (6th Cir. 1984) .......................................................................24

Estate of Thomson v. Toyota Motor Corp. Worldwide,
    545 F.3d 357 (6th Cir. 2008) ......................................................................22

Faber-Plast GmbH v. Kleinert,
    997 F. Supp. 846 (E.D. Mich. 1998).....................................................24, 25

Faurecia Exhaust Sys., Inc. v. Walker,
    464 F. Supp. 2d 700 (N.D. Ohio 2006).................................................13, 14

Flake v. Schrader-Bridgeport Intern., Inc.,
    No. 3:07-0925, 2010 WL 1027128 (M.D. Tenn. Mar. 18, 2010) ............11

Gering v. Fraunhofer-Gesellschaft E.V.,
    No. 05-73458, 2009 WL 2922847 (E.D. Mich. Sept. 9, 2009)...........24, 25

German Free State of Bavaria v. Toyobo Co., Ltd.,
    480 F. Supp. 2d 948 (W.D. Mich. 2007) .................................................23

Glancy v. Taubman Ctrs., Inc.,
    373 F.3d 656 (6th Cir. 2004) .............................................................15, 17

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947)..........................................................................22, 24

Hensley Mfg. v. ProPride, Inc.,
    579 F.3d 603 (6th Cir. 2009) ..................................................................26

Intera Corp. v. Henderson,
    428 F.3d 605 (6th Cir. 2005) ..................................................................20

Interamerican Trade Corp. v. Companhia Fabricadora de Pecas,
    973 F.2d 489 (6th Cir. 1992) .............................................................19, 21

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941)................................................................................26

Koster v. (American) Lumbermens Mut. Cas. Co.,
    330 U.S. 518 (1947)................................................................................22

Lambert v. Kysar,
    983 F.2d 1110 (1st Cir. 1993) ...............................................................21

Long v. Delta Air Lines, Inc.,
    No. 5:08-CV-00210-TBR, 2009 WL 5198092 (W.D. Ky. Dec. 23, 2009) ............................11

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) .................................................................................................21

Martin v. So. Indiana Treatment Ctr., Inc.,
    No. 3:03CV-428-H, 2004 WL 2595946 (W.D. Ky. May 27, 2004) ...................................9, 11

MSX Int'l Eng'g Servs., Inc. v. Levine,
    No. 01-CV-72765, 2002 WL 551041 (E.D. Mich. Apr. 8, 2002) ...........................................17

Neighbors v. Penske Leasing, Inc.,
    45 F. Supp. 2d 593 (E.D. Mich. 1999) ....................................................................................5

Niemi v. NHK Spring Co. Ltd.,
    276 F. Supp. 2d 717 (E.D. Mich. 2003) ....................................................................5, 9, 10, 11

Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.,
    No. 1:10-CV-1062, 2010 WL 2803042 (N.D. Ohio July 14, 2010) .......................................21

Onyx Waste Servs., Inc. v. Mogan,
    203 F. Supp. 2d 777 (E.D. Mich. 2002) ...........................................................................16, 17

Orton v. Johnny's Lunch Franchise, LLC,
    No. 10-11013, 2010 WL 2854303 (E.D. Mich. July 20, 2010) .............................................20

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981) ..................................................................................................22, 23, 25

Prestige Capital Corp. v. Mich. Gage & Mfg., LLC,
    No. 09-11111, 2010 WL 2787438 (E.D. Mich. July 12, 2010) .............................................26

Provident Tradesmens Bank & Trust Co. v. Patterson,
    390 U.S. 102 (1968) ...............................................................................................................18

Ramakrishna v. Besser Co.,
    172 F. Supp. 2d 926 (E.D. Mich. 2001) ...........................................................................22, 23

Republic of the Philippines v. Pimentel,
    553 U.S. 851 (2008) ...............................................................................................................18

RMI Titanium Co. v. Westinghouse Elec. Corp.,
    78 F.3d 1125 (6th Cir. 1996) .................................................................................................25

Roethlisberger v. Tokyo Aircraft Instrument Co. (TKK) of Japan,
    No. 1:90-CV-885, 1992 WL 237317 (W.D. Mich. Jan. 13, 1992) ...........................................8

Shell v. R.W. Sturge, Ltd.,
    55 F.3d 1227 (6th Cir. 1995) ............................................................................................19, 20

So. Machine Co. v. Mohasco Indus., Inc.,
   401 F.2d 374 (6th Cir. 1968) .................................................................................8

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007)....................................................................................26, 27

Theunissen v. Matthews,
   935 F.2d 1454 (6th Cir. 1991) ...............................................................................6

Third Nat'l Bank in Nashville v. WEDGE Group Inc.,
   882 F.2d 1087 (6th Cir. 1989) ......................................................................6, 8, 12

Thomas v. Galt Enters., Inc.,
   No. 01-CV-10384-BC, 2002 WL 1349928 (E.D. Mich. June 20, 2002)..........................26, 28

Tillman v. Apostolopoulos,
   No. 10-cv-12253, 2010 WL 3584294 (E.D. Mich. Sept. 9, 2010) (slip op.) ...................16, 17

UHL v. Komatsu Forklift Co.,
   512 F.3d 294 (6th Cir. 2008) ...............................................................................26

Velandra v. Regie Nationale Des Usines Renault,
   336 F.2d 292 (6th Cir. 1964) .................................................................................9

Weiner v. Klais & Co.,
   108 F.3d 86 (6th Cir. 1997) .............................................................................26, 27

Wong v. Partygaming Ltd.,
   589 F.3d 821 (6th Cir. 2009) .......................................................................19, 20, 21

Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.,
   No. 08-10528, 2009 WL 910764 (E.D. Mich. Apr. 1, 2009) ...................................22, 23, 24

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(2) ............................................................1, 5, 15

Federal Rule of Civil Procedure 12(b)(3) ............................................................1, 19, 20

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 25, 26, 29

Federal Rule of Civil Procedure 12(b)(7) ............................................................1, 5, 15

Federal Rule of Civil Procedure 19 .................................................................15, 16, 17

## STATEMENT OF QUESTIONS PRESENTED

1.      Whether an Abu Dhabi corporation without any connections to the State of Michigan may be subject to the jurisdiction of the State's courts by virtue of the presence of an indirect wholly-owned and independently-operated subsidiary in Michigan.

Movants answer "no."

2.      Whether an action can proceed against an indirect wholly-owned and independently-operated subsidiary where the claims are based on actions by the subsidiary's parent and a contract between the plaintiff and the parent, if the parent is not subject to this Court's jurisdiction.

Movants answer "no."

3.      Whether a mandatory forum selection clause in a written employment contract between an executive and an Abu Dhabi corporation under which the executive's work was principally performed in Abu Dhabi should be enforced where the clause requires that any claims are to be determined under Abu Dhabi's laws and in its courts.

Movants answer "yes."

4.      Whether Abu Dhabi is the more appropriate venue to resolve disputes involving an employment relationship between an executive and an Abu Dhabi corporation, where the work was principally performed in Abu Dhabi, the executive was discharged in Abu Dhabi, and the employment agreement was subject to the laws of Abu Dhabi.

Movants answer "yes."

5.      Whether a breach of contract claim can proceed where the terms of the contract establish that the complained-of actions were in full compliance with the contract.

Movants answer "no."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 12(b)(2), (3), (6), and (7)

Fed. R. Civ. P. 19

## PRELIMINARY STATEMENT

TAQA, an Abu Dhabi public company, employed Plaintiff, Peter Barker-Homek, in Abu Dhabi, pursuant to a written employment agreement that elects Abu Dhabi law as governing law and requires disputes to be resolved in Abu Dhabi.  TAQA's directors terminated Plaintiff as CEO in October 2009.  Plaintiff and TAQA entered into a severance agreement in Abu Dhabi that releases all claims and bars them outright, but that he now alleges was the product of coercion.  Pursuant to that agreement, Plaintiff accepted over $2 million in severance benefits from TAQA.[1]  Nevertheless, Plaintiff now asserts breach of contract and personal injury claims arising from alleged conduct relating to his employment and its termination, all of which occurred in Abu Dhabi.  Plaintiff continued to live in the United Arab Emirates ("UAE") for nine months after his termination.  Then he relocated to California and sued TAQA, one of its subsidiaries, and its General Manager, in Michigan – where Plaintiff never lived or worked.  The slender line allegedly supporting his claim to this Court's jurisdiction is that TAQA has a Michigan subsidiary, of which Plaintiff was a non-employee officer for part of the time TAQA employed him.  Plaintiff's claims are procedurally defective, and must be dismissed under subsections (2), (3), (6), and (7) of Rule 12(b) of the Federal Rules of Civil Procedure, for reasons explained below.

## FACTUAL BACKGROUND

We briefly summarize the relevant facts here.  More detailed statements of the facts are contained in the declarations of Doug Fraser, dated November 4, 2010 ("Fraser Decl.," attached hereto as Exhibit 1), of Carl Sheldon, dated November 5, 2010 ("Sheldon Decl.,"

---

[1]      Over $800,000 of this benefit was paid in cash, and the rest was applied to reduce the principal of a loan from TAQA to Plaintiff.

attached hereto as Exhibit 2) and of Essam Al Tamimi, dated November 3, 2010 ("Al Tamimi Decl.," attached hereto as Exhibit 3) and, as necessary, in the discussion below.

Plaintiff is a current resident of California.  (Compl. ¶ 18).[2]  From May 2006 until July 2010, he resided in the UAE.  (Id. ¶¶ 15, 18, 40).  Abu Dhabi National Energy Company, commonly known as TAQA ("TAQA"), is a public joint stock company organized and existing under the laws of the Emirate of Abu Dhabi.  (Fraser Decl. ¶ 2).  Contrary to the averment of the Complaint, TAQA has no office in North America generally, and none in Ann Arbor, Michigan specifically.  (Id. ¶ 9).  TAQA New World, Inc., a Delaware corporation with its principal place of business in Ann Arbor ("TNW"), is a subsidiary of Aglauros, Inc., a Delaware corporation, which is, in turn, wholly owned by TAQA.  (Id. ¶ 5).

Plaintiff became employed, effective May 1, 2006, as CEO of TAQA, moving from London, England to become resident in the UAE and work in Abu Dhabi.  (Sheldon Decl., Exhibit ("Ex.") A).  At the time, TAQA had no operations, offices, or employees outside Abu Dhabi.  Plaintiff and TAQA are parties to a written employment agreement entered March 2, 2006 (the "Employment Agreement").  (Id.).  The Employment Agreement governed and controlled Plaintiff's employment by TAQA at all material times.  (Sheldon Decl. ¶¶ 8-9).  Contrary to Plaintiff's allegation, the Employment Agreement was not superseded in 2008.  (Id. ¶ 9).  Rather, in 2007 and 2008 Plaintiff's "basic salary" under section 5.1 of the Employment Agreement was increased.  (Id.)  As particularly relevant here, the Employment Agreement contained provisions that stated:

(a)  Plaintiff's "principal place of work" is "the Emirate of Abu Dhabi" (§ 4.1);

---

[2]     The Complaint and Demand for Jury Trial in this action, filed August 27, 2010, shall be referred to herein as "the Complaint" or "Compl."

(b)  Plaintiff's employment continued "unless and until terminated by the Company giving to the Executive not less than 6 months notice in writing" (§ 2.1);

(c)  the Company could "in its absolute discretion terminate the Agreement without prior notice" if it paid the basic salary and benefits otherwise due during the notice period (§ 18.6);

(d)  the Employment Agreement substituted for any other agreement or understanding (§ 23.1); and

(e)  the Employment Agreement was governed by the laws of the Emirate of Abu Dhabi and required that "any disputes shall be referred to the Courts of the Emirate of Abu Dhabi." (§ 22.1).

Plaintiff continued as CEO of TAQA until TAQA's directors, acting in Abu Dhabi in October 2009, terminated his employment.  (Sheldon Decl. ¶ 10).  At that time, TAQA and Plaintiff entered into a written Severance Agreement that contained a release and provided for six months of basic salary paid immediately and an additional six months' salary paid in monthly installments, plus an "ex gratia" payment in lieu of a discretionary bonus of 5 million AED (about $1.36 million) that was applied to an outstanding loan TAQA had made to Plaintiff. (Id. ¶ 10 and Ex. B).  Plaintiff signed written resignations from all positions with the Company's affiliates (including TNW) as expressly required by section 16.2 of his Employment Agreement. (Fraser Decl. ¶ 24 and Ex. A; Sheldon Decl. Exs. A and B).

Plaintiff received all of the consideration provided for in the Severance Agreement, including six months of severance benefits more than required by his Employment Agreement.  (Sheldon Decl. ¶ 10).  Only after accepting a full year's pay in severance did Plaintiff claim that he had been coerced or threatened to enter into the Severance Agreement.  He

continued to reside in the UAE and was frequently present in Abu Dhabi for nine months after his termination, before he ever claimed to be in fear of injury, and he allegedly "fled" the UAE nine months following his termination.  (Compl. ¶ 15).

Defendant TNW is an indirect wholly owned subsidiary of TAQA.  (Fraser Decl. ¶ 5).  TNW is incorporated in Delaware and has its principal offices in Ann Arbor, Michigan. (Id.).[3]  TNW was created in 2006 and has had employees in the U.S. and operations in Michigan since 2007, when it acquired CMS Generation, a U.S. corporation headquartered in Ann Arbor. (Id.).  After the organization of TNW, Plaintiff served as its President, a non-employee officer position, but he was in Michigan to serve that function once or twice only.  (Id. ¶ 15).  TNW is separate and distinct from TAQA and maintains its own offices, officers, employees and records. (Id. ¶¶ 11, 19-20).  TAQA and TNW respect corporate formalities between them, although TNW is subject to some degree of direction and control by TAQA as an indirect subsidiary.  (Id. ¶¶ 8, 19-20).  TAQA has other U.S. operations, which are conducted through the subsidiary of another subsidiary (TAQA North USA, Inc.) headquartered in Colorado.  (Fraser Decl. ¶ 7).  TNW provides certain services to TAQA and to TAQA's power operations elsewhere, which are either part of TNW's regular business, or for which it is reimbursed.  (Id. ¶ 18).

TAQA itself has no operations, offices, employees, or property in Michigan; it sells no goods and provides no services in Michigan.  (Id. ¶¶ 8-13).  TAQA is not qualified to do business in Michigan, it has no agent for service of process in Michigan, and it has no presence in Michigan, except indirectly by virtue of the distinct and separate existence and operation of TNW.  (Id.).  TAQA determined to terminate the employment of Plaintiff in Abu Dhabi, acted to

---

[3]      TNW's Ann Arbor office will close effective January 1, 2011.

4

effectuate that termination there, and entered and performed the Severance Agreement with

Plaintiff exclusively in Abu Dhabi.  (Sheldon Decl. ¶ 10 and Ex. B).

<u>**ARGUMENT**</u>

I.      **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER TAQA, AND TAQA IS AN INDISPENSABLE PARTY.**

TAQA lacks continuous and systematic contacts with the state of Michigan that

would support the exercise of "general" jurisdiction.  Moreover, the causes of action asserted are

not connected to TAQA's narrowly limited Michigan contacts, which precludes the exercise of

"specific" jurisdiction.  Accordingly, the action must be dismissed against TAQA for lack of

personal jurisdiction under Federal Rule 12(b)(2).  If TAQA is dismissed, the entire Complaint

should be dismissed under Rule 12(b)(7) because the action cannot proceed in TAQA's absence.

To be amenable to suit in a particular forum, two requirements must be met: (1) a

defendant must satisfy the jurisdictional standards of the forum state's long-arm statute, and (2)

the exercise of jurisdiction must comport with due process under the Fourteenth Amendment.

<u>See</u> <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257, 1262 (6th Cir. 1996).  Michigan's long-arm

statutes extend to the constitutional limits of the due process clause.  <u>See, e.g.</u>, <u>Chandler v.

Barclays Bank PLC</u>, 898 F.2d 1148, 1152 (6th Cir. 1990); <u>Neighbors v. Penske Leasing, Inc.</u>, 45

F. Supp. 2d 593, 597 (E.D. Mich. 1999).  As a result, the statutory inquiry and the constitutional

inquiry merge and the court must determine whether the defendant has sufficient "minimum

contacts" with the forum, so that exercising personal jurisdiction does not violate due

process.  <u>Niemi v. NHK Spring Co. Ltd.</u>, 276 F. Supp. 2d 717, 719 (E.D. Mich. 2003).

The burden to establish personal jurisdiction rests on the plaintiff.  <u>Andrews Univ.

v. Robert Bell Indus., Ltd.</u>, 685 F. Supp. 1015, 1017 (W.D. Mich. 1988).  The "plaintiff may not

stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that

the court has [personal] jurisdiction." <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991).

    **A.**    <u>**General Jurisdiction Cannot Be Exercised Over TAQA Because It Does Not Have Continuous and Systematic Contacts in Michigan.**</u>

        To assert general jurisdiction requires that a defendant's contacts with the forum state be of such a continuous and systematic nature that the state may exercise jurisdiction over the defendant even as to actions unrelated to the defendant's contacts with the state. <u>Third Nat'l Bank in Nashville v. WEDGE Group Inc.</u>, 882 F.2d 1087, 1089 (6th Cir. 1989). Plaintiff's claims here relate to conduct that occurred entirely outside of Michigan, and indeed outside the United States. He alleges that TAQA terminated his employment in Abu Dhabi in breach of his Employment Agreement and in retaliation for his objections to alleged "illegal practices," and that he was threatened and harassed by Defendants, all of which occurred in Abu Dhabi. (<u>See</u> Compl. ¶¶ 53-71). Accordingly, Plaintiff must demonstrate that TAQA has continuous and systematic contacts in Michigan to support the exercise of general jurisdiction. He cannot do so.

        Courts consider various factors in determining whether a defendant has continuous and systematic contacts with a forum, including whether the defendant: (i) maintains any offices, facilities, or plants in the forum; (ii) is qualified or registered to do business in the forum; (iii) has shareholders or board of directors meetings in the forum; (iv) has an agent for service of process in the forum; (v) owns or leases any personal or real property in the forum; (vi) maintains any bank accounts in the forum; (vii) pays taxes in the forum; (viii) has employees who are residents of the forum; or (ix) manufactures or purchases any raw materials in the forum. <u>See, e.g.</u>, <u>Cupp v. Alberto-Culver USA, Inc.</u>, 308 F. Supp. 2d 873, 878 (W.D. Tenn. 2004); <u>Dean Mktg. v. AOC Int'l (USA) Ltd.</u>, 610 F. Supp. 149, 152-53 (E.D. Mich. 1985). Courts refuse to exercise general jurisdiction where the majority of these factors are

absent, even if the defendant has limited contact with the forum.  See, e.g., Caldwell v. Cheapcaribbean.com, Inc., No. 2:09-cv-13828, 2010 WL 3603778, at *4-5 (E.D. Mich. Sept. 8, 2010) (no general jurisdiction over out-of-state defendant operating a website that was available to and used by Michigan residents, where defendant did not own property in Michigan, did not pay Michigan taxes, had no employees or agents in Michigan, had no facilities in Michigan, and was not authorized to do business in the state).[4]

TAQA's connections to Michigan are so limited that general jurisdiction cannot possibly be justified.  Plaintiff's conclusory allegation that TAQA "does business in Michigan through its wholly owned and controlled subsidiary, [TNW]," (Compl. ¶ 30) is belied by the facts.  TAQA is an Abu Dhabi company with its principal place of business in Abu Dhabi. (Compl. ¶¶ 5, 19; Fraser Decl. ¶ 2).  TAQA has never owned, used, possessed, rented, or leased real or personal property in Michigan, nor has it ever manufactured or purchased raw materials in Michigan or distributed or sold any products or services in Michigan.  (Fraser Decl. ¶ 9).  It owns no assets in Michigan and has no offices, facilities or records in Michigan.  (Id. ¶¶ 10-11). TAQA is not licensed to do business in Michigan; it does not have an agent for service of process in Michigan.  (Id. ¶ 10).  TAQA has never paid taxes in Michigan; it does not have a bank account in Michigan; it does not have employees who are Michigan residents.  (Id. ¶¶ 11-12).  TAQA's Board of Directors has never met in Michigan.  (Id. ¶ 13).

TAQA's only contact in Michigan is its ownership of TNW, an indirect subsidiary with its principal place of business in Ann Arbor.  (See Compl. ¶ 19; Fraser Decl. ¶¶ 5, 8).  This is not enough to support general jurisdiction.  Ownership of a subsidiary based in the forum or doing business in the forum is only one of many factors that a court can consider in

---

[4]        Copies of unpublished cases referenced in this brief are attached as Exhibit 4.

determining whether exercising jurisdiction is proper.  Roethlisberger v. Tokyo Aircraft Instrument Co. (TKK) of Japan, No. 1:90-CV-885, 1992 WL 237317, at *2 (W.D. Mich. Jan. 13, 1992).  Importantly, the mere existence of such a subsidiary, standing alone, is insufficient to demonstrate continuous and systematic contacts with a forum.  See Third Nat'l Bank, 882 F.2d at 1089 (out-of-state parent with subsidiary in the forum had insufficient contacts with forum to support general jurisdiction); Cupp, 308 F. Supp. 2d at 878 (no general jurisdiction over French company with American subsidiary that distributed products in the forum).  TAQA's lack of continuous and systematic contacts in Michigan precludes the exercise of general jurisdiction.

**B.**  **Specific Jurisdiction Cannot Be Exercised Over TAQA because its Limited Michigan Contacts Do Not Give Rise to the Claims.**

In a specific jurisdiction case, the court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.  Third Nat'l Bank, 882 F.2d at 1089.  Specific jurisdiction cannot be exercised over TAQA because the action is not connected to TAQA's limited contacts in Michigan.

The Sixth Circuit has developed a three-part test for determining whether specific jurisdiction can be exercised over a defendant consistent with due process.  Under this test, the plaintiff bears the burden of establishing three requirements: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  Third Nat'l Bank, 882 F.2d at 1089 (citing So. Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).  Plaintiff cannot meet any of these three requirements.

8

1. **TAQA has not purposefully availed itself of the privilege of acting in Michigan.**

The purposeful availment requirement ensures that the defendant is not hailed into court because of "attenuated" contacts with the forum. CompuServe, 89 F.3d at 1263. TAQA's connection to Michigan is just that.

TAQA's only contact in Michigan is the presence of TNW. As in the general jurisdiction analysis, ownership by a foreign parent of a subsidiary in the forum is only one factor to consider in the purposeful availment analysis, and thus the existence of TNW alone is insufficient. See Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1274 (6th Cir. 1998); Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292, 297 (6th Cir. 1964); Martin v. So. Indiana Treatment Ctr., Inc., No. 3:03CV-428-H, 2004 WL 2595946, at *2 (W.D. Ky. May 27, 2004); Niemi, 276 F. Supp. 2d at 721.

Plaintiff appears to assert that TAQA's alleged "control" over TNW is sufficient to demonstrate purposeful availment, but any such argument is unfounded.[5] Where corporations maintain corporate formalities and the parent company does not involve itself in the subsidiary's day-to-day operations, courts have refused to find purposeful availment, even where the parent maintained some control over the subsidiary and the management of the two corporations overlapped. See, e.g., Dean, 134 F.3d at 1274-74 (no purposeful availment where foreign parent and in-state subsidiary shared some managers and parent provided some services to subsidiary); Martin, 2004 WL 2595946, at *2-3 (no jurisdiction over out-of-state parent with in-forum subsidiary where president of subsidiary was also CEO of parent, the parent spoke for the

---

[5]      It is also misplaced.  In Velandra, the Sixth Circuit explained that theories about fictitious corporate separation, the parent holding the subsidiary out as an agent, or the parent exercising undue control over the subsidiary were developed for purposes other than determining amenability to personal jurisdiction, and that applying them in the jurisdictional analysis merely confuses the matter. See 336 F.2d at 296-97.

9

subsidiary in the media, and the handbooks and policies of the subsidiary were the parent's documents); Niemi, 276 F. Supp. 2d at 722-23 (no purposeful availment over a Japanese parent of U.S. subsidiary that did business in Michigan where parent was not involved in the daily operations of the subsidiary; "cross-pollination" of corporate staffing was insufficient to show that parent ran subsidiary).

Plaintiff makes the conclusory allegation that TAQA and TNW are "for all intents and purposes . . . one and the same" (see Compl. ¶ 21), but he pleads no facts to support these assertions. TAQA's business is separate from that of TNW and its other affiliates. The worldwide energy business of TAQA and its affiliates (collectively, the "TAQA Group") includes three separate components: downstream, midstream, and upstream. (Fraser Decl. ¶ 3). The downstream business involves power generation and water desalinization; the midstream business involves energy storage, transportation, and processing infrastructure; and the upstream business focuses on exploration and production of natural gas and crude oil. (Id.). TAQA itself conducts business activities in all three segments of its business. (Id. ¶ 4). TNW focuses only on the downstream business. (See id. ¶ 6). Moreover, contrary to Plaintiff's allegation, TNW was not established to operate TAQA's business in the United States. TAQA has a Canadian subsidiary which in turn has its own U.S. subsidiary, TAQA North USA, Inc., that is a Colorado corporation that conducts upstream business (i.e., crude oil and gas exploration) in Colorado, Wyoming, North Dakota, and Montana. (Id. ¶ 7). Thus, the business of TAQA is broader than that of TNW. (See id. ¶ 17).

Not only do the companies have separate businesses, but they conduct themselves separately as well. TAQA and TNW maintain separate books and financial records; TNW files

its own tax returns; and the companies hold themselves out publicly as distinct entities.  (Id. ¶ 20).  TNW's employees are paid by TNW, not by TAQA.  (Id. ¶ 12).[6]

Further, the majority of TNW's officers are officers only of TNW.  (Fraser Decl. ¶ 21).  In any event, the sharing of some officers between parent and subsidiary is common and does not establish purposeful availment.  See Dean, 134 F.3d at 1274-74; Martin, 2004 WL 2595946, at *2-3; Niemi, 276 F. Supp. 2d at 722-23.  Even to the extent TAQA exercises some degree of supervision and control over TNW, a corporate parent's "general involvement with the subsidiary corporation's performance, finance and budget decisions, and general policies and procedures does not provide a basis for attributing the corporation's contracts with the forum to the other for the purpose of personal jurisdiction."  Flake v. Schrader-Bridgeport Intern., Inc., No. 3:07-0925, 2010 WL 1027128, at *6 (M.D. Tenn. Mar. 18, 2010) (citation omitted).

When deciding a motion to dismiss for personal jurisdiction, the court must accept only the well pled facts from Plaintiff's complaint, and not "mere conclusory allegations." Long v. Delta Air Lines, Inc., No. 5:08-CV-00210-TBR, 2009 WL 5198092, at *6 (W.D. Ky. Dec. 23, 2009).  Plaintiff's bald assertion that TAQA controls the decisions and operations of TNW is not supported by the facts.

> **2.    The cause of action is not substantially connected to TAQA's in-state activities.**

Separately, specific jurisdiction cannot be exercised because Plaintiff's cause of action does not have a "substantial connection" with TAQA's activities in Michigan.  Dean, 134 F.3d at 1275.

---

[6]    TNW has one employee, Vadiraj Chenji, who has certain global responsibilities for TAQA, but TAQA reimburses TNW for those services.  (See Fraser Decl. ¶ 12).  In addition, Defendant Carl Sheldon is paid by TNW as a matter of administrative convenience because he maintains a residence in the United States, but TAQA similarly reimburses TNW for the costs of Sheldon's services.  (Id.).

The "substantial connection" requirement is not satisfied if "the operative facts of the controversy are not related to the defendant's contact with the state." Id. (citing Third Nat'l Bank, 882 F.2d at 1091). TAQA employed Plaintiff in Abu Dhabi and he resided in the UAE from 2006 until he returned to the United States in July 2010 and became a resident of California. (See Compl. ¶¶ 15, 18, 40). His claims relate to his discharge by TAQA in Abu Dhabi and alleged conduct by TAQA in Abu Dhabi with respect to that termination. Any alleged injury could only have been suffered in Abu Dhabi. Not one allegation in the Complaint relates to conduct occurring in Michigan, any alleged injury suffered in Michigan, or any likely witnesses in Michigan.[7]

That Plaintiff served as President of TNW does not create a substantial connection between the cause of action and the forum. Plaintiff held a similar position with over a dozen TAQA subsidiaries in various countries and jurisdictions as a result of his employment with TAQA. (Fraser Decl. ¶ 16). Neither TNW nor any other TAQA subsidiary was a party to the employment agreement between Plaintiff and TAQA. (See Fraser Decl. ¶¶ 15-16; see also Sheldon Decl., Ex. A at 1). Thus, the breach of contract claim has no connection to TNW or to Michigan. Plaintiff was never an employee of TNW; he was compensated exclusively by TAQA. (See Sheldon Decl., Ex. A at 1; Fraser Decl. ¶ 15). There is accordingly no connection between the retaliatory discharge claim and TNW or Michigan. Finally, nothing in the remaining tort claims alleges any conduct by TNW, and certainly no conduct by anyone in Michigan.

---

[7] Only one individual named in the Complaint, Vadiraj Chenji, resides in Michigan, and he is named only once, as someone Plaintiff allegedly "called out" as "underperforming." (Compl. ¶ 9). Chenji is not alleged to have been involved in Plaintiff's termination or any other events underlying this action.

12

Where neither the alleged unlawful conduct nor the effects of that conduct occurred in the forum state, the cause of action element of the specific jurisdiction test cannot be satisfied.  See Calphalon v. Rowlette, 228 F.3d 718, 723-24 (6th Cir. 2000) (requirement not met where breach of contract at issue did not occur in the forum state and the consequences were not connected to the forum state); Ausel v. Unisys Corp., No. 94-73359, 1996 WL 426476 (E.D. Mich. Apr. 9, 1996) (employment-related statutory or tort claims not governed by Michigan law when premised on actions that occurred elsewhere), aff'd, 129 F.3d 1263 (6th Cir. 1997). Specific jurisdiction cannot be exercised in this case because there is no connection – let alone a substantial one – between the alleged conduct and TAQA's contacts in the forum.

### 3.    Exercising specific jurisdiction over TAQA would be unreasonable under the circumstances.

Even if this Court determines that TAQA purposefully availed itself of the privilege of doing business in Michigan and that the cause of action had a substantial connection to TAQA's contacts in the forum, specific jurisdiction still cannot be exercised over TAQA because it would be unreasonable to do so.

In analyzing this third requirement, courts consider various factors, including (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in promoting a judicially efficient resolution; and (v) the shared interest of the several states in furthering fundamental substantive social policies.  See City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 666 (6th Cir. 2005); Faurecia Exhaust Sys., Inc. v. Walker, 464 F. Supp. 2d 700, 707-08 (N.D. Ohio 2006).  The reasonableness inquiry assumes increased importance in the context of international defendants.  City of Monroe, 399 F.3d at 666 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should

13

have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

   In this case, the balance of these factors weighs heavily and decisively against exercising personal jurisdiction over TAQA.  The burden on TAQA of litigating the case in Michigan would be significant.  All of the likely witnesses – including all but two of the individuals named in the Complaint – work and reside in Abu Dhabi.  (Fraser Decl. ¶ 22; Compl. ¶¶ 9, 10, 14, 49, 52, 69).  Since Plaintiff performed his services for TAQA in Abu Dhabi, the relevant documents will be located there.  (Fraser Decl. ¶ 23).  See Faurecia Exhaust Sys., 464 F. Supp. 2d at 708 (burden on Swiss resident of litigating in Ohio "obvious and substantial").

   Michigan lacks an interest in adjudicating this dispute.  Most important, Plaintiff is not a Michigan resident.  Furthermore, the allegations arise from conduct by an Abu Dhabi company with respect to an employee who lived and worked in the UAE.  Plaintiff was not employed by TNW, TNW did not pay his compensation, TNW was not a party to his employment agreement, and he has not alleged any conduct by TNW in connection with his termination.  See Faurecia Exhaust Sys., 464 F. Supp. 2d at 708 (in breach of contract action, Ohio had minimal interest compared to France when contract was with Ohio company, but Plaintiff was Swiss resident and performance under contract occurred exclusively in France).

   The remaining factors also weigh against exercising personal jurisdiction over TAQA.  Although Plaintiff has an interest in obtaining effective relief, he can obtain such relief in Abu Dhabi.  See Part II, below.  Finally, the interest of Michigan in promoting a judicially efficient resolution and furthering substantive social policies would not be served by litigating this matter in Michigan.  This matter relates to events occurring in Abu Dhabi and governed by Abu Dhabi law, not the laws or policies of Michigan, or even any other state.  See Part III,

below.  The most efficient and reasonable way to resolve this matter would be to litigate it in Abu Dhabi.

**C.**   **If TAQA Is Dismissed under Rule 12(b)(2), the Entire Action Should Be Dismissed Under Rule 12(b)(7) for Failure to Join a Required Party.**

If TAQA is dismissed for lack of personal jurisdiction, the entire action should be dismissed because it cannot proceed without TAQA.  Rule 19 establishes standards for determining whether a particular party is required to be joined, and if so, whether the court should proceed with the action if joinder is not feasible.  Fed. R. Civ. P. 19.  The court first must determine whether the person (or entity) is a necessary party under Rule 19(a).  Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 666 (6th Cir. 2004). If joinder is not feasible, the court must analyze the Rule 19(b) factors to determine whether, "in equity and good conscience," the case can proceed, or whether it must be dismissed because the absent party is indispensable.  Id.  Rule 12(b)(7) authorizes dismissal based on failure to join a required party.  Fed. R. Civ. P. 12(b)(7).

**1.     TAQA is a required party under Rule 19(a).**

A person is required to be joined if: (A) in the person's absence, the court cannot accord complete relief among the existing parties; or (B) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.  Fed. R. Civ. P. 19(a).  TAQA satisfies the Rule 19(a) standard in two ways.

First, complete relief cannot be accorded in TAQA's absence.  See Rule 19(a)(1)(A).  Plaintiff's primary allegations in the Complaint relate to the termination of his employment (see Compl. ¶¶ 80-93), and relief can only be accorded to him with respect to his

termination if TAQA is a party. Plaintiff's employment contract was with TAQA. (See Sheldon Decl., Ex. A at 1; Fraser Decl. ¶¶ 15-16). If TAQA is not a party, Plaintiff cannot obtain relief on his breach of contract claim because this Court cannot enforce a judgment for breach of contract against TNW, which was not a contract party. Plaintiff was not even employed by TNW. (See Sheldon Decl., Ex. A at 1; Fraser Decl. ¶ 15). He therefore cannot obtain relief on his wrongful discharge claim if TAQA is not a party to the action because TNW cannot be liable for discharging an individual that was never its employee. A party is required to be joined if its absence precludes "meaningful relief" for the plaintiff. See Cooper v. Digital Processing Sys., Inc., 182 F.R.D. 242, 247-48 (N.D. Ohio 1998), aff'd, 215 F.3d 1342 (Fed. Cir. 1999).

Second, TAQA is a required party under Rule 19(a)(1)(B)(i) because it has an interest in the subject of the action, and its absence would impair its ability to protect that interest. It is beyond dispute that a party to a contract at issue in an action has an interest in the subject of the action for purposes of Rule 19(a)(1)(B). See, e.g., Tillman v. Apostolopoulos, No. 10-cv-12253, 2010 WL 3584294, at *2 (E.D. Mich. Sept. 9, 2010) (slip op.); Onyx Waste Servs., Inc. v. Mogan, 203 F. Supp. 2d 777, 786 (E.D. Mich. 2002). TAQA cannot protect its legal interest in the contract if it is not a party to the action. Tillman, 2010 WL 3564294, at *2. Nor can it protect its interests as Plaintiff's former employer if it is absent from the action.

2. **The action should be dismissed because TAQA cannot be joined, and under Rule 19(b), it would be inequitable for the case to proceed without TAQA.**

As set forth above, TAQA should be dismissed as a defendant for lack of personal jurisdiction. Because TAQA is a required party under Rule 19(a), and because joinder of TAQA is not feasible, the Court must proceed to the Rule 19(b) inquiry to determine whether, in equity and good conscience, the action should continue without TAQA. It should not.

The court considers several factors in determining whether an action should proceed in the absence of a required party or be dismissed: (1) the extent to which a judgment rendered in the person's absence might prejudice the person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  See Fed. R. Civ. P. 19(b).  The balance of these factors weighs in favor of dismissing this action entirely if TAQA is not a party.

To begin, any holding by this Court in favor of Plaintiff relating to TAQA's obligations under the Employment Agreement would undoubtedly cause it prejudice.  See Tillman, 2010 WL 3584294, at *4 (where person was party to contract that was subject of breach of contract claim, it "has a valid interest in defending itself against claims of breach," and its absence would cause it prejudice); Onyx Waste Servs., 203 F. Supp. 2d at 787 ("a contracting party is the paradigm of an indispensable party") (citation omitted).

Moreover, neither TNW nor Sheldon could adequately represent TAQA's interests in the action.  See Glancy, 373 F.3d at 672 (adequacy inquiry requires analysis of whether remaining parties can represent absent party's interests).  TAQA and TNW are separate legal entities, and courts have refused to assume that related but distinct corporations have identical interests for purposes of Rule 19(b).  See, e.g., Onyx Waste Servs., 203 F. Supp. 2d at 788 (two related corporations were separate legal entities with legal concerns distinct from one another); MSX Int'l Eng'g Servs., Inc. v. Levine, No. 01-CV-72765, 2002 WL 551041, at *8 (E.D. Mich. Apr. 8, 2002) (owner of two absent corporations could not protect the interests of the corporations, which were separate legal entities).  Sheldon, as an individual, has an interest in

17

protecting himself against personal liability.  His interest is not necessarily congruent with TAQA's interests as Plaintiff's former employer.  There is no way that relief could be shaped in this action to eliminate or even lessen the prejudice TAQA would suffer if the action proceeds without it.

A judgment rendered in this action without TAQA also would not be adequate. The adequacy factor "refers to the 'public stake in settling disputes by wholes, whenever possible.'"  Republic of the Philippines v. Pimentel, 553 U.S. 851, 870 (2008) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)).  Courts should consider the social interest in the efficient administration of justice and the avoidance of multiple litigation.  Id.  TAQA is the only party that can provide relief to Plaintiff on his key claims.  If TAQA is absent, it will not be bound by the judgment, and Plaintiff will be forced to litigate the matter separately as to his rights against it.  See Republic of the Philippines, 553 U.S. at 870-71 (proceeding without absent party would not further public interest in settling disputes as a whole because absent party would not be bound by the judgment).  Indeed, as set forth in the declaration of Essam Al Tamimi, because the Abu Dhabi courts would have original jurisdiction of the claims in this action, any judgment rendered here may well be unenforceable in the UAE. Al Tamimi Decl. ¶¶ 39-40, 75, 77.

Finally, Plaintiff would have an adequate remedy if the case were dismissed for nonjoinder.  As set forth more fully in Part II below and the Al Tamimi declaration, Plaintiff can bring all of his claims in Abu Dhabi.  For these reasons, and to avoid piecemeal litigation, the entire action should be dismissed so that Plaintiff may re-file it in Abu Dhabi.

II.    **THE CASE SHOULD BE DISMISSED UNDER RULE 12(B)(3) PURSUANT TO A CONTRACTUAL, MANDATORY FORUM SELECTION CLAUSE OR UNDER THE DOCTRINE OF FORUM NON CONVENIENS.**

This case should be dismissed under Rule 12(b)(3) because Michigan is an inappropriate venue.  The Employment Agreement contains a mandatory forum selection clause naming Abu Dhabi as the forum.  Even without this clause, Abu Dhabi is the more appropriate forum for adjudicating the claims at issue.

A.    **The Court Should Enforce the Forum Selection Clause of the Employment Agreement.**

Mandatory forum selection clauses in international agreements are presumptively enforceable and "'should control absent a strong showing that [they] should be set aside.'"  Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1229 (6th Cir. 1995) (enforcing forum selection clause in investor dispute that gave exclusive jurisdiction to English courts and dismissing action) (citation omitted); see also Interamerican Trade Corp. v. Companhia Fabricadora de Pecas, 973 F.2d 489, 489-90 (6th Cir. 1992) (enforcing forum selection clause in breach of contract action that gave exclusive jurisdiction to Brazilian courts).[8]  Courts consider three specifically delineated factors in determining whether to set aside a mandatory forum selection clause: (1) whether it was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.  See Wong, 589 F.3d at 828.  The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced.  See id.

The Employment Agreement between Plaintiff and TAQA provides:

---

[8]    In diversity suits, the enforceability of forum selection clauses is governed by federal law.  See Wong v. Partygaming Ltd., 589 F.3d 821, 826-28 (6th Cir. 2009).

19

> 22.1    This Agreement is governed by and shall be construed in
> accordance with the Laws of the Emirate of Abu Dhabi and the Federal
> Laws of the United Arab Emirates as applied by the courts in the Emirate
> of Abu Dhabi and any disputes shall be referred to the Courts of the
> Emirate of Abu Dhabi.

(Sheldon Decl., Ex. A, ¶ 22.1).  The parties negotiated the Employment Agreement at arm's length, while Plaintiff was in England and TAQA's representatives were in Abu Dhabi.  (See Sheldon Decl. ¶ 8 and Ex. A at 1.)[9]  Plaintiff makes no allegation that the forum selection clause of the Employment Agreement is the product of fraud, duress, or other unconscionable means.[10]

As to the second factor, contractual enforcement is available in Abu Dhabi.  The contractual law of Abu Dhabi – which is the law of the UAE – provides governing law here.  Federal courts in Abu Dhabi can and would provide an appropriate forum, with appropriate procedures to address Plaintiff's contractual claims.  (Al Tamimi Decl. ¶¶ 10-49, 78-82).  Similarly, although torts in the exact form of those asserted here do not exist in the UAE, personal injury claims akin to those tort causes of action exist and could be raised and resolved in Abu Dhabi courts, applying Abu Dhabi law.  (Al Tamimi Decl. ¶¶ 63-70); see also Shell, 55 F.3d at 1231 ("that parties will have to structure their case differently than if they were litigating in federal court is not a sufficient reason to defeat a forum selection clause").  Plaintiff makes inflammatory and unsupportable conclusory allegations regarding Abu Dhabi's courts and its "Ruling Family."  Those broad conclusions are unsupportable.  (Al Tamimi Decl. ¶¶ 22-49).  In any event, Plaintiff has an adequate and available remedy in Abu Dhabi courts under Abu Dhabi

---

[9]     Affidavits and other evidence may be considered by the court on a motion to dismiss for improper venue pursuant to Rule 12(b)(3).  Orton v. Johnny's Lunch Franchise, LLC, No. 10-11013, 2010 WL 2854303, at *3 n.5 (E.D. Mich. July 20, 2010) (citing Intera Corp. v. Henderson, 428 F.3d 605, 614 (6th Cir. 2005)).

[10]    Plaintiff wrongly alleges that he entered into a second employment agreement with TAQA in 2008.  No such agreement exists.  (See Sheldon Decl. ¶ 3).

law.  His vague, inflammatory assertions are insufficient to avoid dismissal.  See Wong, 589

F.3d at 829 ("Different or less favorable foreign law or procedure alone does not satisfy this

prong.") (internal citations omitted); Interamerican Trade Corp., 973 F.2d at 489-90

("speculative concern regarding fairness of a foreign court, which parties must have considered

when negotiating the agreement, does not justify refusal to enforce the clause").

   The third factor, which requires that the forum be so seriously inconvenient as to

be unjust, is equally unavailing.  "This finding must be based on more than mere inconvenience

of the party seeking to avoid the clause."  Wong, 589 F.3d at 829.  In fact, aside from Plaintiff,

his wife and two unlikely witnesses, every other witness and all relevant documents and data are

located in Abu Dhabi.  (Fraser Decl. ¶¶ 22-23; see also Compl. ¶¶ 1, 2, 5, 9, 14, 24, 49, 52, 68-

69).  This alone seriously undermines Plaintiff's attempt to avoid the mandatory forum selection

clause under factor three.  Of course, Plaintiff was fully aware of the location he committed to

proceed in when he agreed to the Employment Agreement, and he should not now be heard to

assert that it would be inconvenient.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 16-

18 (1972); Interamerican Trade Corp., 973 F.2d at 490.

   For these reasons, this Court should defer to the mandatory forum selection clause

and dismiss this action.[11]

---

[11] To the extent that Plaintiff hopes to avoid the forum selection clause by asserting related
tort claims and/or claims against TAQA's subsidiary TNW, that attempt fails.  See Am. Patriot
Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd., 364 F.3d 884, 889 (7th Cir. 2004) ("Nor is a forum-
selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in
which the clause appears"); Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc., No. 1:10-CV-
1062, 2010 WL 2803042, at *5 (N.D. Ohio July 14, 2010) (citing Lambert v. Kysar, 983 F.2d
1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade
enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the
context of a contract dispute") (citation omitted)).

**B.      Dismissal in Favor of an Abu Dhabi Forum is Warranted Under the Doctrine of *Forum Non Conveniens.***

Even without the mandatory forum selection clause, dismissal is warranted under the doctrine of *forum non conveniens*.  In conducting a *forum non conveniens* analysis, a court first considers whether there is an adequate alternative forum.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247-54 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 363-64 (6th Cir. 2008).  If there is, the court then weighs private and public interests to determine the most appropriate forum.  Piper, 454 U.S. at 257-60; Thomson, 545 F.3d at 364.  The ultimate goal of this analysis is to determine "where trial will best serve the convenience of the parties and the ends of justice."  Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947).  Here, all factors favor Abu Dhabi.

**1.      Abu Dhabi is an adequate alternative forum.**

An alternative forum is adequate if the defendant is amenable to process there and the plaintiff is legally able to sue there.  See Thomson, 545 F.3d at 365; Ramakrishna v. Besser Co., 172 F. Supp. 2d 926, 929 (E.D. Mich. 2001).  The Al Tamimi declaration demonstrates that these requirements are satisfied.  Courts presume that the substantive law of a foreign jurisdiction is adequate, and Plaintiff bears the burden of overcoming that presumption.  Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V., No. 08-10528, 2009 WL 910764, at *2 (E.D. Mich. Apr. 1, 2009); Ramakrishna, 172 F. Supp. 2d at 931.

All defendants in this action are amenable to process in Abu Dhabi.  While it is likely that they would all be subject to jurisdiction by virtue of their ties to Abu Dhabi alone, all have stipulated to jurisdiction and service in Abu Dhabi.  (See Stipulation, attached hereto as Exhibit 5, ¶¶ 1-2).

Plaintiff is legally able to pursue his claims in Abu Dhabi.  The Employment

Agreement, and Plaintiff's employment generally, were governed by Abu Dhabi law.  Abu

Dhabi law provides causes of action under contract closely analogous to those under U.S. law.

(Al Tamimi Decl. ¶¶ 78-82).  Similarly, UAE and Abu Dhabi law permits recovery for personal

injury that Plaintiff could assert based on the underlying facts alleged in his Complaint.  (Id. ¶¶

58-70).  Thus, "an alternative forum exists even when a plaintiff may not be able to proceed on a

particular legal theory, or the potential damages may be smaller."  German Free State of Bavaria

v. Toyobo Co., Ltd., 480 F. Supp. 2d 948, 952-53 (W.D. Mich. 2007); see also Piper, 454 U.S. at

241-42, 254-55 (alternative forum's substantive law is only inadequate if it is so clearly

unsatisfactory that it is no remedy at all;  law less favorable to plaintiff cannot establish

inadequacy).  Plaintiff has a remedy under Abu Dhabi law, and that is sufficient to establish an

adequate alternative forum.

Nor can Plaintiff rely on conclusory, inflammatory assertions regarding the

integrity of the Abu Dhabi government or its judicial system to defeat a motion under *forum non

conveniens*.  "[G]eneralized allegations of corruption have not enjoyed a particularly impressive

track record on *forum non conveniens* motions" and are regularly disregarded.  Ramakrishna,

172 F. Supp. 2d at 931 (citations omitted) (emphasis added); see also Zions, 2009 WL 910764, at

*2 (granting motion for *forum non conveniens* where allegations that judicial corruption in

Mexico is "well reported" and reference to one instance of corruption were insufficient to

establish that Mexico is an inadequate forum).  In any event, those allegations are not

supportable.  (Al Tamimi Decl. ¶¶ 10-49).  Since Plaintiff can proceed with his claims against

Defendants in Abu Dhabi court, Abu Dhabi is an adequate alternative forum.

>  **2.**     **The balance of private and public interests overwhelmingly favors
>              Abu Dhabi.**

The private factors that courts should weigh in determining the proper judicial forum include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508. Among the public interest considerations are administrative difficulties for congested courts away from the case's origin, avoidance of imposing jury duty on members of a community that has no relation to the litigation, desirability of holding a trial near those most affected by it, and having cases decided by a court familiar with the governing law while avoiding "having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Id. at 508-09; see also Dowling v. Richardson-Merrell, Inc., 727 F.2d 608, 612 (6th Cir. 1984).

The private interest factors here all favor Abu Dhabi. The issues in dispute center in Abu Dhabi and have nothing to do with Michigan.[12] All likely witnesses, save Plaintiff and his wife, are in Abu Dhabi. Even Plaintiff and his wife have no connection to Michigan. See Gering v. Fraunhofer-Gesellschaft E.V., No. 05-73458, 2009 WL 2922847, at *5 (E.D. Mich. Sept. 9, 2009) (dismissing complaint brought by Florida resident against German company for which Plaintiff had worked in Germany on grounds of *forum non conveniens*).

The public interest factors all favor Abu Dhabi. Michigan has no relation to or interest in the litigation. No relevant events occurred in Michigan, no documents are located here, and no likely witnesses are located here – not even Plaintiff. Michigan's docket and

---

[12]    TNW's Michigan presence does not change the analysis. Plaintiff was employed by TAQA and was involved in TNW's operations by virtue of that employment. (See Fraser Decl. ¶ 15). Notably, Plaintiff never alleges that he performed any substantial duties for TNW, or that he spent any significant time in Michigan after TNW became a subsidiary. (See Compl. ¶¶ 20, 38-51).

residents should not be burdened "with a case with such minimal local connection."  Faber-Plast GmbH v. Kleinert, 997 F. Supp. 846, 850 (E.D. Mich. 1998) (dismissing action for breach of contract between German corporation and U.S. citizen for performance in Germany on *forum non conveniens* grounds); see also Zions First National Bank, 2009 WL 910764, at *3 (dismissing action brought by Utah banking association against Mexican company on *forum non conveniens* grounds).[13]  On the other hand, Abu Dhabi and its citizens have a significant interest in how its national power company is run.  Moreover, Abu Dhabi law governs Plaintiff's claims.  See Part III, below.  An Abu Dhabi court is far better situated to apply Abu Dhabi law, and courts in the United States are loath to interpret foreign law when courts in the foreign jurisdiction are available.  See Piper, 454 U.S. at 251; Faber-Plast, 997 F. Supp. at 849-50; Gering, 2009 WL 2922847, at *5.  Finally, it is likely that a court in Abu Dhabi would not enforce any decision of this Court on the basis that it had jurisdiction to hear the dispute in the first instance.  (Al Tamimi Decl. ¶¶ 71-77).

Abu Dhabi is unquestionably the more appropriate forum for this action.  Accordingly, the Court should dismiss the Complaint in favor of the forum both agreed to by Plaintiff and most appropriate to resolving these issues.

## III.   PLAINTIFF'S CONTRACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

If the Court declines to dismiss the Complaint, it should nonetheless dismiss Plaintiff's breach of contract claim under Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.  The claim (like Plaintiff's other claims) is governed by Abu Dhabi law, and under that law or any other, he has no claim for contractual breach.

---

[13]   Again, TNW's location in Michigan is irrelevant to the analysis because Plaintiff was not employed by TNW and did not receive compensation from TNW.  (See Fraser Decl. ¶ 15).

A.    **Standard of Review**

Rule 12(b)(6) requires dismissal when a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must consider "documents incorporated into the complaint by reference."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (citation omitted); Thomas v. Galt Enters., Inc., No. 01-CV-10384-BC, 2002 WL 1349928, at *4 (E.D. Mich. June 20, 2002) (considering contract not attached to complaint in dismissing plaintiff's breach of contract claim).

B.    **The Choice of Law Provision in the Contract is Enforceable**
      **under Michigan Law.**

The Employment Agreement is expressly governed by the law of Abu Dhabi. (See Sheldon Decl., Ex. A, ¶ 21.1).  This clause is enforceable under Michigan choice of law rules, which apply here.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); UHL v. Komatsu Forklift Co., 512 F.3d 294, 302 (6th Cir. 2008).  Contractual choice of law provisions are generally enforced, unless there is a strong policy reason for not doing so.  See Prestige Capital Corp. v. Mich. Gage & Mfg., LLC, No. 09-11111, 2010 WL 2787438, at *6 (E.D. Mich. July 12, 2010).  Here, the relationship between Abu Dhabi, the parties and

transaction is obvious, and it was entirely reasonable to designate Abu Dhabi law to govern the agreement.

### C.   The Breach of Contract Claim Fails To Allege Sufficient Facts to Entitle Plaintiff to Relief under Abu Dhabi Law.

Plaintiff's breach of contract claim is wholly implausible.  The contract, which this Court may consider on a motion to dismiss, contains no supposed conditions that Plaintiff alleges were breached.  To the contrary, its terms undermine any claim that his termination was improper.[14]

Abu Dhabi law interprets and enforces contracts in a manner generally familiar to this Court.  Written agreements are enforceable according to their terms, and are not easily subject to variance or amendment orally.  (Al Tamimi Decl. ¶ 79).  Parties are free to agree to whatever terms they like, and if those terms are clear, the court must enforce them as written.  (Id. ¶¶ 80-81).  Here, there is a written agreement, which governs, and its clear terms preclude the claims asserted.

Plaintiff alleges his breach of contract claim against both TAQA and TNW.  (Compl. at 22 (First Cause of Action)).  The claim fails as it relates to TNW because TNW was not a party to the Employment Agreement.  That agreement states clearly that only TAQA and

---

[14]      As an initial matter, the breach of contract claim and Plaintiff's tort claims all are barred by Plaintiff's severance agreement with TAQA.  (See Sheldon Decl., Ex. B).  (The Severance Agreement can be considered on this motion pursuant to Rule 12(b)(6) because it is referenced throughout the Complaint, and the Complaint represents an attempt to avoid its enforcement.  See Tellabs., 551 U.S. at 322; Weiner, 108 F.3d at 89; (see also Compl. ¶¶ 10-11, 59-60, 84).)  Plaintiff accepted and has retained over US $2 million of payments under the Severance Agreement.  (See Sheldon Decl., Ex. B at 4).  He has claimed that agreement was procured by "duress" and "coercion" but appears not to have pleaded a claim to nullify that agreement.  So long as its terms stand, it bars all of Plaintiff's claims. We assume for purposes here, and without prejudice to TAQA and TNW's further positions, that Plaintiff claims to rescind the Severance Agreement.

27

Plaintiff are parties, and Plaintiff has not alleged otherwise.  (See Sheldon Decl., Ex. A at 1).

The breach of contract claim against TNW should, therefore, be dismissed.

Plaintiff fails to allege facts sufficient to state a contract claim against TAQA.

Plaintiff identifies no contract term that allegedly has been breached.  Contrary to Plaintiff's

atmospheric assertions, the contract expressly states that it constitutes the entire agreement

between the parties, and Plaintiff "warrant[ed] and agree[d] that he is not entering into this

agreement in reliance on any representation not expressly set out in this agreement."  (See

Sheldon Decl., Ex. A, ¶¶ 23.1-23.2).  Plaintiff therefore cannot allege that TAQA breached

promises not contained in the contract.  See Thomas, 2002 WL 1349928, at *4 (finding no

statements in contract to support plaintiff's breach of contract claim).

The Employment Agreement specifies the manner in which either party could

terminate it – with or without cause.  (See Sheldon Decl., Ex. A, ¶¶ 2, 18).  Most notably, the

contract gives TAQA "absolute discretion" to terminate the relationship without notice (id. ¶

18.6) and allows TAQA's Board, "in its absolute discretion, [to] require the Executive not to

render all or any of his duties under this Agreement and/or exclude him from any premises of the

Company or of any Group Company (without providing any reason therefore)."  (Id. ¶ 2.5(A)

(emphasis added)).[15]

Thus, the actions allegedly taken by TAQA – terminating Plaintiff without notice

and giving him no reason – were expressly within TAQA's contractual rights under the

Agreement.  (See Compl. ¶ 57).  The right to terminate Plaintiff's employment as set forth in the

---

[15]  The Employment Agreement requires that if TAQA terminates Plaintiff without notice, it
must pay him the equivalent of six months' salary.  (Sheldon Decl., Ex. A, ¶ 18.6).  TAQA paid
– and Plaintiff accepted – cash payment of over $800,000, double the contractual severance
requirement.  (Sheldon Decl. ¶ 10 and Ex. B at 4).

Agreement is enforceable under UAE law.  (See Al Tamimi Decl. ¶ 80).  Plaintiff's allegations

that the defendants "undermined" him and "demanded" that he "accept and cover-up massive

fraud" are naked assertions that do not support a breach of contract claim.  (See Compl. ¶ 84).

Even accepting these allegations for purposes of a motion to dismiss, they do not allow a

reasonable inference that TAQA breached the Employment Agreement, since it had an absolute

contractual right to terminate his employment for any or no reason under the contract's express

terms.[16]  TAQA complied with its obligations under sections 2.1 and 18.6 of the Employment

Agreement; Plaintiff has not alleged – and cannot allege – otherwise.  His termination did not

cause or result from any breach of contract.  For these reasons, Plaintiff's breach of contract

claim must be dismissed pursuant to Rule 12(b)(6).[17]

## CONCLUSION

For the reasons stated above, Defendants TAQA and TAQA New World, Inc.

respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

November 5, 2010

Respectfully submitted,

/s/ Adam J. Wienner
John F. Birmingham Jr. (P47150)
Adam J. Wienner (P71768)

---

[16]     To the extent that Plaintiff predicates his breach of contract claim on an alleged 2008
employment agreement, such a claim would similarly fail because his conclusory allegations do
not point to any specific terms of such a contract that were breached.  In any event, no
subsequent employment agreement was executed between TAQA and Plaintiff in 2008.
(Sheldon Decl. ¶ 9).  If plaintiff asserts the 2006 agreement was vitiated, he must produce the
document that replaced it.

[17]     Although Defendants are not moving to dismiss Plaintiff's tort law claims pursuant to
Rule 12(b)(6) at this time, these claims – like the breach of contract claim – are deficient.  They
too are governed by Abu Dhabi law, and the Complaint fails to state facts that would entitle
Plaintiff to relief in tort under applicable law.  Defendants expressly reserve the right to move to
dismiss these claims at a later point in the litigation if the Court elects not to dismiss the entire
Complaint under one or more of the grounds set forth herein.

FOLEY & LARDNER LLP
500 Woodward Avenue
Suite 2700
Detroit, MI  48226-3489
(313) 234-7100
jbirmingham@foley.com
awienner@foley.com

David Dunn
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY  10022
Tel:  212-918-3000
Fax:  212-918-3100
david.dunn@hoganlovells.com

*Counsel for Defendants TAQA and
TAQA New World, Inc.*

Of Counsel:

Paul C. Skelly (admission pending)
Robert S. Bennett (admission pending)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC  20004
Tel:  202-637-5600
Fax:  202-637-5910
paul.skelly@hoganlovells.com
robert.bennett@hoganlovells.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BARKER-HOMEK,

          Plaintiff,                Case No. 5:10-CV-13448-JCO-VMM

vs.                             Judge John Corbett O'Meara
                             Magistrate Judge Virginia M. Morgan

ABU DHABI NATIONAL ENERGY
COMPANY PJSC aka TAQA, a
Corporation; TAQA NEW WORLD,
INC., a Delaware corporation; CARL
SHELDON, an individual; and DOE
DEFENDANTS 1-50, inclusive,

          Defendants.

---

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on November 5, 2010, I electronically filed the foregoing **Motion to Dismiss on Behalf of Defendants TAQA and TAQA New World, Inc.** using the ECF System, which will send notification of such filing to all attorneys of record.

                          /s/ Adam J. Wienner
                          Adam J. Wienner (P71768)
                          awienner@foley.com
                          **FOLEY & LARDNER LLP**
                          500 Woodward Avenue, Suite 2700
                          Detroit, Michigan 48226-3489
                          Telephone:  313.234.7100
                          Facsimile:  313.234.2800
                          *Counsel for Defendants TAQA and*
                          *TAQA New World, Inc.*

Dated:  November 5, 2010

1