UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BARKER-HOMEK,

    Plaintiff,

v.

    Case No. 10-13448

ABU DHABI NATIONAL ENERGY
COMPANY PJSC aka TAQA, a corporation;
TAQA NEW WORLD, INC., a Delaware
corporation; CARL SHELDON, an
individual, and DOE DEFENDANTS
1-50 inclusive,

    Hon. John Corbett O'Meara

    Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

Before the court are two motions to dismiss filed by Defendants, as well as a motion to exclude Plaintiff's expert witness. The court held an evidentiary hearing on the issues of personal jurisdiction and the proper forum on June 22 and 23, 2011. For the reasons stated below, Defendants' motions to dismiss are granted.

## BACKGROUND

On August 27, 2010, Plaintiff Peter Barker-Homek filed a complaint against his former employer, Abu Dhabi National Energy Company ("TAQA"), TAQA New World, Inc. ("TNW"), Carl Sheldon, and fifty "Doe Defendants." Plaintiff was CEO of TAQA from 2006 until October 2009. Plaintiff contends that he was terminated from his employment at TAQA after he objected to fraudulent accounting practices and corruption at the company. Plaintiff is currently a resident of California, but at the time of his employment with TAQA, he resided in Abu Dhabi.

TAQA is a global energy company based in Abu Dhabi that was created in 2005. Governmental entities own the majority of TAQA: the Abu Dhabi Water and Electricity Authority owns 51 percent, the Fund for the Support of Farm Owners in the Emirate of Abu Dhabi owns 27 percent, and the rest is publicly traded on the Abu Dhabi Stock Exchange. TR at 45-46; Declaration of D. Fraser at ¶ 2. TNW is a wholly owned indirect subsidiary of TAQA. TNW is a direct subsidiary of Aglauros, Inc., a Delaware corporation, which is wholly owned by TAQA. Declaration of D. Fraser at ¶ 5. TNW is a Delaware corporation with its principal place of business in Ann Arbor, Michigan.

TAQA and its affiliates divide their business into three principal components, commonly recognized in the energy industry: downstream, midstream, and upstream. Id. at ¶ 3. The downstream business involves power generation and water desalinization; the midstream business involves energy storage, transportation, and processing infrastructure; and the upstream business focuses on exploration and production of natural gas and crude oil. Id. According to Defendants, TNW focuses on the "downstream" component of the business of the TAQA Group.

Effective May 1, 2006, Plaintiff became employed by TAQA as its CEO. Plaintiff and TAQA entered into a written employment agreement on March 2, 2006, which provided that Plaintiff's "principal place of work" was Abu Dhabi, that it was governed by the laws of Abu Dhabi, and that "any disputes shall be referred to the Courts of the Emirate of Abu Dhabi." Agreement at §§ 4.1, 22.1.

TNW was formed in 2006; it acquired CMS Generation in Michigan in 2007 and opened an office in Ann Arbor. See Declaration of D. Fraser at ¶ 5. Pursuant to his employment agreement, Plaintiff became President of TNW, a non-employee officer position.

CMS Generation had a staff of forty-five in Jackson, Michigan, and operations around the world. After the acquisition, TNW hired almost every employee from CMS's Jackson office. Plaintiff alleges that the majority of TAQA's worldwide operations are handled out of TNW in Ann Arbor: human resources, accounting, internal audit, technical support, tax management, legal and risk management, regulatory affairs, and power plant development, operations, and maintenance. TAQA disputes Plaintiff's characterization and emphasizes that TAQA itself does not conduct business, sell products, own or lease property, pay taxes, or have an office or bank account in Michigan. Declaration of D. Fraser at ¶¶ 10-12. Defendants contend that TAQA and TNW are separate companies with separate businesses, bank accounts, books, financial records, and tax returns. Id. at ¶¶ 17-22; Declaration of C. Sheldon at ¶¶ 4-6.

Plaintiff alleges that, in 2009, he became concerned about the improper reporting of TAQA's assets and liabilities on its financial statements. When he raised the issue with key executives at TAQA, including Defendant Carl Sheldon (General Counsel and Deputy General Manager), he was told that he should "keep quiet."

In October 2009, Plaintiff alleges that he was pressured to sign off on financial statements that he considered "bogus," because of the improperly reported assets and liabilities. Plaintiff refused to do so. About a week later, Plaintiff was terminated as CEO. He states that he was given no reason for the termination. Plaintiff contends that Sheldon demanded that Plaintiff sign a "severance agreement" requiring him to step down as CEO, forfeit rights under the employment agreement, cease participating in TAQA's benefit plans, and "keep quiet." Plaintiff requested a few days to review the document, but alleges that Sheldon threatened that if he did not sign immediately, he would be thrown in prison. Sheldon stated that TAQA would

"call" the loan on Plaintiff's residence (provided by TAQA) and that he would then be in default. (Plaintiff contends that there are debtor's prisons in Abu Dhabi.) Plaintiff maintains that he signed the severance agreement under duress. Sheldon denies threatening Plaintiff.

Under the severance agreement, Plaintiff was required to stay in Abu Dhabi and continue working as a "Special Advisor to the Chairman." Plaintiff claims that he and his family were harassed, followed, and told to keep quiet. Plaintiff insists that he was unable to leave Abu Dhabi. He states that TAQA let him leave only because he appeared to be going for medical treatment for his infant son. Plaintiff left his belongings behind and traveled with his family to New York in July 2010. Shortly thereafter, he filed this action.

## LAW AND ANALYSIS

### I.     TAQA's Motion to Dismiss for Lack of Jurisdiction

TAQA seeks dismissal of this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Because the court held an evidentiary hearing on the issue, Plaintiff bears the burden of demonstrating that jurisdiction exists by a preponderance of the evidence. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Serras v. First Tennessee Bank Nat. Ass'n., 875 F.2d 1212, 1214 (6th Cir.1989). "A federal court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant." Theunissen, 935 F.2d at 1459.

#### A.     General Jurisdiction

Personal jurisdiction can be general, where the defendant has continuous and systematic contact with the forum state, or limited (also known as specific), where the subject matter of the lawsuit is related to the defendant's contacts with the forum state. See Sports Auth. Mich. Inc. v.

Justballs, Inc., 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (Woods, J.). In Michigan, courts have general jurisdiction over a corporation when it incorporates under Michigan laws, consents to be sued in Michigan, or carries on a "continuous and systematic part of its general business within the state." M.C.L. § 600.711.

TAQA itself does not carry on a continuous and systematic part of its general business in Michigan. It does not (1) own or lease property; (2) operate an office or facility; (3) have an agent for service of process; (4) maintain a bank account; (5) pay taxes; (6) or manufacture, distribute, purchase, or sell products in Michigan. See Declaration of D. Fraser at ¶¶ 10-12.

Plaintiff suggests that TAQA conducts a continuous and systematic part of its general business in Michigan through its relationship with TNW. Plaintiff contends that TAQA and TNW are essentially the same company and invites the court to attribute TNW's contacts to TAQA. It does not appear that such an analysis is appropriate, however, when determining general personal jurisdiction. Indeed, an analysis of a parent's control over a subsidiary is generally found in cases identifying whether the parent has sufficient minimum contacts to support *specific* jurisdiction, not whether the parent conducts a continuous and systematic part of its general business in the state so as to confer *general* jurisdiction. See Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989) (finding it "apparent" that parent company did not have "continuous and systematic" contacts supporting general jurisdiction, but finding specific jurisdiction based upon parent's control of subsidiary and other contacts); In re Telectronics Pacing Sys., Inc., 953 F. Supp. 909, 914 (S.D. Ohio 1997) (no general jurisdiction over parent, but finding specific jurisdiction based upon parent's relationship to subsidiary); Odeh v. Auto Club Ins. Assn., 2010 WL 319742 at *4 (N.D. Ohio 2010) ("Although plaintiff

argues that the Court can exercise general jurisdiction over [the parent company] by virtue of [the parent's] relationship with [the subsidiary], plaintiff cites no case in support of his argument.").

The case law does not support a finding that general jurisdiction in Michigan may be based upon a parent corporation's ownership and control of a subsidiary, as opposed to its own "continuous and systematic" contacts. Here, TAQA's continuous and systematic contacts with Michigan are lacking. The court finds that it does not have general jurisdiction over TAQA.

### B. Specific Jurisdiction

Plaintiff contends that, even if the court cannot exercise general jurisdiction over TAQA, specific jurisdiction exists. In analyzing specific jurisdiction, the court must engage in a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007). See also Green v. Wilson, 455 Mich. 342, 350-52 (1997). Plaintiff appears to argue that the applicable long-arm statute is satisfied because TAQA has engaged in "[t]he transaction of any business within the state." M.C.L. § 600.715 (corporations; limited personal jurisdiction). To the extent this provision is satisfied, three criteria must be met to satisfy due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1299 (6th Cir. 1989) (quoting Southern Machine Co. v. Mohasco Indus. Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

The first criterion – a showing that the defendant has "purposefully availed itself of the privilege of transacting business" in the forum state, thus invoking the benefits and protections of its laws – is "the *sine qua non* for *in personam* jurisdiction." Id. (quoting Mohasco, 401 F.2d at 381-82). The "purposeful availment" prong is satisfied by the "kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws' as opposed to a mere 'collateral relation to the forum state.'" Id. (citations omitted). The ownership of subsidiary that conducts business in the forum is "one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts." Third Nat'l Bank, 882 F.2d at 1090 n.1 (quoting Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 297 (6th Cir. 1964)). Mere ownership of a subsidiary in the forum, however, is insufficient to confer jurisdiction. The plaintiff "must provide evidence for us to conclude that [the parent company] is being brought into court for something it has done, not for something that [the subsidiary] has done." Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1274 (6th Cir. 1998).

Plaintiff asserts that TAQA and TNW are controlled by the same officers and directors, and that TNW has no board or shareholder meetings apart from TAQA. According to Plaintiff, TNW does not have a separate budget and does not generate its own financial statements. Cf. Declaration of Doug Fraser at ¶ 19-20 ("TAQA does not involve itself with the routine day-to-day operations of TNW. . . . TAQA and TNW maintain separate bank accounts, books, and financial records."). Plaintiff avers that Michigan is the "hub" of TAQA's operations worldwide, with the following operations handled out of Ann Arbor: human resources,

accounting, internal audit, technical support, tax management, legal and risk management groups, regulatory affairs, and power plant development, operations and maintenance.

Plaintiff contends that, as CEO of TAQA, he traveled to Michigan on at least four occasions in 2006 in order to negotiate the purchase of assets from CMS and to look for office space for TNW. Barker-Homek Decl. at ¶¶ 24-26. Plaintiff also contends that he spent "approximately three to four months in Michigan" in 2008 and three months in 2009. Id. at ¶ 43. According to Plaintiff, as CEO of TAQA he "oversaw the business that was conducted in the Ann Arbor office." Id. at ¶ 44. Plaintiff also states that "many of TAQA's key executives were based out of Ann Arbor." Cf. Declaration of Doug Fraser at ¶ 12, 19, 22 ("TAQA has no employees who are Michigan residents.").

If this court were deciding this matter on the affidavits, it could find that Plaintiff has satisfied his burden of demonstrating, on a prima facie basis, that TAQA purposely availed itself of doing business in Michigan. However, at the evidentiary hearing, it became clear to the court that Plaintiff has overstated his and TAQA's contacts with Michigan. For example, current CEO Carl Sheldon testified that TAQA's accounting and legal functions are performed in Abu Dhabi, not Ann Arbor. TR at 20-23. TNW's office in Ann Arbor closed as of December 2010, which belies Plaintiff's contention that Ann Arbor is the "hub" of TAQA's worldwide operations. TR at 24-26. Indeed, Plaintiff himself advocated the closing of TNW's Ann Arbor office as far back as 2008. TR at 26-27, 158; Defs.' Ex. 12.

Sheldon also testified that he was not aware of Plaintiff traveling to TNW's office in Ann Arbor since Sheldon joined the company in April 2008. TR at 32. At the evidentiary hearing, Plaintiff maintained that he spent three to four weeks in Michigan in 2008, and two to three

weeks in 2009, which is significantly less time than he said he spent in Michigan in his declaration. See TR at 160-61.  Moreover, according to TAQA's travel and company credit card records, Plaintiff traveled to Michigan *once* in 2008 and 2009, to attend the opening of the TNW office in Ann Arbor in February 2008.  See TR at 164; Declaration of Roshan Varghese (TAQA Travel Specialist); Declaration of Hussein Jiaan (TAQA Accounting Manager); Declaration of Kathleen Ewing (Travel Coordinator for TNW); Declaration of Richard Mukhtar (Managing Director of TNW).

The facts regarding TAQA's contacts in Michigan and control of TNW are in dispute, with the evidence in Plaintiff's favor primarily coming from Plaintiff's declaration and testimony.  Given the discrepancies and inaccuracies in Plaintiff's testimony, as illustrated above, the court cannot fully credit it.  It is not clear to the court how much control of TNW and contact with Michigan TAQA really had.  Accordingly, Plaintiff has not fulfilled his burden of demonstrating that TAQA "purposefully availed" itself of the privilege of doing business in Michigan by a preponderance of the evidence.

Even if the purposeful availment prong were met, however, Plaintiff would also need to demonstrate the remaining Southern Machine requirements.  The second requirement is that "the cause of action must arise from the defendant's activities" in Michigan.  Third Nat'l Bank, 882 F.2d at 1091.  "Although this does not require that the cause of action arise formally and directly from defendant's contacts with the forum, the cause of action must still 'have a substantial connection with the defendant's in-state activities.'" Dean, 134 F.3d at 1275 (citation omitted). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Third Nat'l

Bank, 882 F.2d at 1091 (quoting Southern Machine, 401 F.2d at 384 n.29).

At most, Plaintiff has demonstrated that TAQA exercised some control over TNW, through overlapping board members and officers. TAQA's contacts with Michigan are its acquisition and alleged control over TNW. Plaintiff's claims, however, are not substantially related to TNW or its acquisition. Although Plaintiff served as an officer of TNW, he also was an officer of over a dozen TAQA subsidiaries in various countries as a result of his employment with TAQA. When Plaintiff entered into his employment agreement with TAQA, TNW was not yet in existence.

Plaintiff's claims are based on an alleged breach of the employment agreement with TAQA and retaliatory discharge. TNW is not a party to the employment agreement. At the time of his discharge, Plaintiff resided and worked in Abu Dhabi. TAQA terminated him, allegedly breaching the contract and retaliating against him, in Abu Dhabi.

Plaintiff attempts to link his claims to Michigan by arguing that he was terminated because he complained of fraud that allegedly occurred in Michigan. The court is not persuaded that such slight connection to Michigan is sufficient, given the clear nexus of Plaintiff's claims with Abu Dhabi. Further, even if this Michigan connection was relevant, Plaintiff has not established that it exists as a matter of fact. The fraud alleged by Plaintiff was included in TAQA's financial statements. According to one of TAQA's accountants, although a ministerial consolidation of TAQA's accounting records and those of its subsidiaries occurred in Michigan, the substantive preparation and approval of TAQA's financial statements took place in Abu Dhabi. Declaration of Srinivasan Gopalakrishnan at ¶¶ 5-6 ("The accountants at TNW [in Michigan] involved in providing support for TAQA's accounting never had the authority and

never made any substantive decisions relating to the content or presentation of the information in TAQA's financial statements.").

Plaintiff's breach of contract, retaliation, and various tort claims do not have a "substantial connection" with TAQA's contacts with Michigan. Because Plaintiff has not established either of the first two Southern Machine requirements, the court need not consider the third – whether the exercise of jurisdiction over TAQA would be reasonable. The court notes, however, that this factor likely weighs in favor of TAQA as well, given that it "receives deference under this test because of its status as a foreign company: 'The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" Dean, 134 F.3d at 1275 (quoting Asahi Metal Indus. Co. v. Superior Ct. of California, 480 U.S. 102, 114 (1987)). "The interests of the forum state, and of the 'several states' and the federal government, 'will be best served by . . . an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state.'" Id. (quoting Asahi, 480 U.S. at 115).

Because Plaintiff has failed to establish the Southern Machine requirements by a preponderance of the evidence, the court finds that it does not have specific jurisdiction over TAQA.[1]

## II. Carl Sheldon's Motion to Dismiss

Defendant Carl Sheldon also seeks dismissal on personal jurisdiction grounds. Plaintiff

---

[1] As a result, the court need not consider TAQA's argument that this action should be dismissed based upon the Abu Dhabi forum selection clause in the agreement or based upon *forum non conveniens*.

alleges that the court has specific jurisdiction over Sheldon arising from his contacts with Michigan as an officer of TAQA and TNW.[2] Sheldon is a citizen of the United States and of the United Kingdom, and is a resident of the State of New York. Sheldon joined TAQA as its General Counsel and Deputy General Manager in April 2008. In October 2009, after Plaintiff was terminated, Sheldon was appointed General Manager of TAQA. Since Sheldon joined TAQA, he has also served as Vice-President of TNW. He described his responsibilities as Vice-President of TNW as "largely ministerial, including activities such as signing documents on behalf of TNW. My responsibilities as Vice President of TNW have never included managing TNW's Michigan operations or running TNW's U.S. operations." Declaration of Carl Sheldon at ¶ 4.

Sheldon avers that his office has always been in Abu Dhabi, not Michigan. He testified that he took approximately nine business trips to Michigan during his time with TAQA. TR at 31-32. Although he was paid by TNW "as a matter of administrative convenience" since he maintains a U.S. residence, "TAQA reimburses TNW for the cost of my service." Id. at ¶ 6.

Plaintiff has alleged tort claims against Sheldon – assault, intentional infliction of emotional distress, and negligent infliction of emotional distress – that arise from his discharge and alleged threats Sheldon made thereafter, all of which took place in Abu Dhabi. See TR at 34-36, 150-51; Compl. at ¶¶ 2, 10-11, 15-16, 53, 56, 59-60, 62, 70-71.

The court finds that Plaintiff has not established by a preponderance of the evidence that the court has specific jurisdiction over Sheldon. It may be that Sheldon's contact with Michigan as an officer of TNW satisfies the "purposeful availment" prong of the Southern Machine test.

---

[2] Plaintiff does not allege that the court has general jurisdiction over Sheldon.

However, Plaintiff's claims against Sheldon are in no way related to Sheldon's Michigan contacts.  See generally Third Nat'l Bank, 882 F.2d at 1091.  Sheldon's alleged acts, resulting in Plaintiff's tort claims, all took place in Abu Dhabi.  Plaintiff's tort claims against Sheldon have no connection, let alone a "substantial connection" to Michigan.  Indeed, Michigan's interest in this case is slim to non-existent, given that neither Plaintiff nor Sheldon are Michigan citizens and the acts or injuries alleged did not occur here.  The court finds that under all of the circumstances, the exercise of specific jurisdiction over Sheldon would be unreasonable.

### III.     Motion to Dismiss for Failure to Join a Required Party

It is undisputed that the court has jurisdiction over TNW, which had its principal place of business in Ann Arbor, Michigan.  Defendants argue, however, that the entire action should be dismissed because it cannot proceed without TAQA.  See Fed. R. Civ. P. 12(b)(7).  Rule 19 governs whether a particular party is required to be joined, and if so, whether the court should proceed with the action if joinder is not feasible.  The court must first determine whether TAQA is a necessary party under Rule 19(a).  See Glancy v. Taubman Centers, Inc., 373 F.3d 656, 666 (6th Cir. 2004); Onyx Waste Serv. Inc. v. Mogan, 203 F. Supp.2d 777, 785 (E.D. Mich. 2002) (Zatkoff, J.).  If joinder is not feasible, the court must analyze the Rule 19(b) factors to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b).

Rule 19(a) provides:

> A person who is subject to service of process and whose joinder
> will not deprive the court of jurisdiction over the subject matter of
> the action shall be joined as a party in the action if (1) in the
> person's absence complete relief cannot be accorded among those

> already parties, or (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the
> action in the person's absence may (i) as a practical matter impair
> or impede the person's ability to protect that interest or (ii) leave
> any of the persons already parties subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent obligations by
> reason of the claimed interest.

Id. TAQA is clearly a required party under Rule 19(a). First, complete relief cannot be accorded to Plaintiff if TAQA is not a party. Plaintiff was employed by TAQA and his employment agreement was with TAQA. TNW is not a party to the employment agreement and the court cannot enforce the agreement against TNW. Second, TAQA cannot protect its legal interest in the contract if it is not a party.

As discussed above, it is not feasible to join TAQA in this action because the court lacks personal jurisdiction over it. The court must then analyze the Rule 19(b) factors:

> The factors to be considered by the court include: first, to what
> extent a judgment rendered in the person's absence might be
> prejudicial to the person or those already parties; second, the
> extent to which, by protective provisions in the judgment, by the
> shaping of relief, or other measures, the prejudice can be lessened
> or avoided; third, whether a judgment rendered in the person's
> absence will be adequate; fourth, whether the plaintiff will have an
> adequate remedy if the action is dismissed for nonjoinder.

Id. "The factors are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than the other. The four factors are not exclusive." Onyx, 203 F. Supp. 2d at 787 (citation omitted). Further, "the major focus is equity and good conscience, which permits the court to consider all circumstances bearing on the fairness or advisability of choosing one course over the other." Id. (citation omitted).

In considering the Rule 19(b) analysis, the court notes that "precedent supports the proposition that a contracting party is the paradigm of an indispensable party." Onyx, 203 F.

Supp.2d at 787 (citations omitted); see also 4 Moore's Federal Practice ¶ 19.06[3] (3d ed. 2000) (courts often "dismiss rather than proceed without co-obligees" under a contract whose joinder is not feasible). A judgment rendered in TAQA's absence regarding Plaintiff's breach of contract and retaliatory discharge claims would prejudice TAQA, who is the only defendant who is a party to the contract. Certainly, TAQA has an interest in defending itself against Plaintiff's claims. Plaintiff has not articulated how this prejudice could be lessened or avoided. Although Plaintiff suggests that TNW could adequately represent TAQA's interest, their interests are not completely aligned, as TNW is not a party to the contract and presumably would have different defenses to Plaintiff's claims than TAQA. Nor is the court willing to assume an identity of interest based upon the parent-subsidiary relationship under the circumstances of this case, where Plaintiff's claims are largely directed at TAQA, the "absent" party. Indeed, it appears that TNW was joined as a defendant in order to provide a U.S. forum for Plaintiff, not because Plaintiff's claims arise from any specific actions taken by TNW.

Plaintiff's recourse is to pursue his claims against TAQA in Abu Dhabi, as set forth in his employment agreement. See Agreement at ¶ 22.1 (providing for Abu Dhabi forum and choice of law). Plaintiff contends that he would not have an adequate remedy in Abu Dhabi for various reasons, which are disputed by Defendants. See Pl.'s Br. at 18-23; Defs.' Br. at 19-23. Assuming for the purposes of argument that Abu Dhabi is not an adequate alternative forum, Plaintiff nonetheless cannot overcome the other factors that weigh in favor of finding that TAQA is an indispensable party. The only party against which Plaintiff can obtain adequate and complete relief is TAQA, an Abu Dhabi company that employed Plaintiff in Abu Dhabi, pursuant to an employment agreement providing for an Abu Dhabi forum and choice of law.

The court is not free to substitute TNW, a separate entity, for TAQA so that Plaintiff may pursue his claims in the United States.

The court finds that TAQA is an indispensable party to this action, without whom it cannot proceed.  Accordingly, the court will dismiss Plaintiff's complaint in its entirety.

## ORDER

IT IS HEREBY ORDERED that TAQA and TNW's motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that Carl Sheldon's motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that TAQA and TNW's motion to exclude Plaintiff's expert is DENIED AS MOOT.


            s/John Corbett O'Meara
            United States District Judge


Date:  September 28, 2011



I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 28, 2011, using the ECF system.

            s/William Barkholz
            Case Manager